O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN, ET AL.,**<br><br>    **Plaintiffs,**<br><br>    **vs.**<br><br>**PRO TECH ENGINEERING CORPORATION,**<br><br>    **Defendants.** | **Case No.: SA CV 15-0637-DOC (Ex)**<br><br>**ORDER GRANTING IN PART PLAINTIFFS' APPLICATION FOR AN AWARD OF FEES AND COSTS [52]** |

Before the Court is Plaintiffs' Application for an Award of Fees and Costs ("Application") (Dkt. 52). Oral argument was held on June 10, 2016 (Dkt. 55). Having reviewed the papers and considered the parties' arguments, the Court hereby GRANTS IN PART Plaintiffs' Application.

### I. Background

Plaintiffs commenced this action on April 22, 2015. *See generally* Complaint ("Compl.") (Dkt. 1). On Jun 10, 2015, Plaintiffs filed a Request for Entry of Default Pursuant to Federal Rule of Civil Procedure 55(a) (Dkt. 10). On June 12, 2015, the Clerk entered default against Defendant Pro Tech Engineering Corporation ("Pro Tech" or "Defendant") (Dkt. 11).

On August 17, 2015, Plaintiffs, who are trustees of express trusts ("Trusts") created pursuant to written declarations of trust ("Trust Agreements'"), *see id.* ¶ 5, filed a Motion to Compel Defendant to Produce Documents, and Request for Sanctions, arguing Defendant failed to produce certain documents despite being served with a subpoena ("Motion to Compel") (Dkt. 16). On September 18, 2015, the Magistrate Judge issued an Order Compelling Defendant to Produce Documents, and Awarding Sanctions to Plaintiffs ("September 18, 2015 Order") (Dkts. 21, 31).[1] In the September 18, 2015 Order, the Magistrate Judge ordered Defendant Pro Tech to produce the documents that had been specifically identified in the subpoenas Plaintiffs served on Pro Tech and Mostafa Niknafs ("Niknafs"), Pro Tech's principal. *Id.* at 1–5. The Magistrate Judge also ordered Pro Tech to pay sanctions in the amount of $1,488.00. *Id.* at 5. Pro Tech did not comply with the Magistrate Judge's Order by the deadline set in the Magistrate Judge's September 18, 2015 Order.

On January 29, 2016, Plaintiffs filed a Motion for Default Judgment against Defendant Pro Tech (Dkt. 25). In the Motion for Default Judgment, Plaintiffs sought to compel an audit of Pro Tech and collect unpaid fringe benefit contributions and related mandatory damages due under a collective bargaining agreement and 29 U.S.C. § 502(g)(2). Mot. for Default Judgment at 1. On March 21, 2016, the Court denied the Motion for Default Judgment without prejudice, concluding that, "[b]ecause no contribution deficiencies have yet been determined (because

---

[1] Due to a clerical error, the version of the Magistrate Judge's September 18, 2015 Order at docket number 21 is missing a page. The complete document can be found at docket number 31.

1 Plaintiffs have been unable to complete their audit [of Defendant Pro Tech]), the Court finds no
2 basis to award liquidated damages or interest." ("March 21, 2016 Order") (Dkt. 32). The Court
3 further stated: "because it appears Defendant failed to comply with the Magistrate Judge's
4 Order, the Court finds it appropriate to set a hearing on contempt." *Id.* at 5.

On April 4, 2016, Defendant filed Objections to Being Held in Contempt ("Objections")
(Dkt. 36). On April 5, 2016, Defendant filed an Ex Parte Application to Set Aside Default Re:
Clerk's Entry of Default (Dkt. 39). In these filings, Defendant stated it was never served with
the Summons, Compaint, subpoenas, Motion to Compel, or the Magistrate Judge's Order. *See id.*; Objections at 1.

On May 9, 2016, the Court held the contempt hearing.[2] Michael Frias ("Frias"), the process server employed by Plaintiffs, testified, as did Niknafs. During the cross examination of Niknafs by Plaintiffs' counsel (Mr. Bechtel), the following took place:

> Q: Mr. Niknafs, do you typically retrive the mail in your household?
>
> A: When I'm coming home, uh, from work, I retrieve the mail.
>
> Q: And that's your normal practice?
>
> A: Yes.
>
> Q: Whether you – the e-mail you just referenced in Defendant's Exhibit 6,[3] did you also receive a copy of that document by mail?
>
> A: No, I did not.
>
> Q: If you were to receive mail at your house that was labeled to Pro Tech Electric, would you reject that mail?
>
> A: I would – if I received it, I would open it.
>
> Mr. Bechtel: May we approach the witness, Your Honor?
>
> Mr. McDonald: May I see what they're gonna show him?

---

[2] The Court notes that, on April 15, 2016, it issued an Order stating it "finds an evidentiary hearing is necessary on the question of whether Defendant was properly served with the underlying complaint, subpoenas, Motion to Compel, and the Magistrate Judge's Order." Order Continuing Hearing Date and Requiring Counsel to Produce Appropriate Witnesses for an Evidentiary Hearing ("April 15, 2016 Order") (Dkt. 45) at 2. The Court ordered counsel for both parties to secure witnesses. *Id.*

[3] Defendant's Exhibit 6 is an "email chain dated March 22, 2016 from Cheryl Roberts to Mostafa Niknafs attaching Order denying Motion for Default Judgment Without Prejudice." *See* Joint Exhibit List (Dkt. 51) at 2.

1 . . .

2 (*Documents provided to the witness.*)

3 The Court: Counsel, your questions.

4 By Mr. Bechtel:

5 Q: Can you look at that first document, the first envelope that was handed

6 to you.

7 A: Yes.

8 . . .

9 Q: It's addressed to Pro Tech Engineering Corporation, doing business as

10 Pro Tech Electric.

11 Is that – are you looking at the correct document?

12 The Witness: You mean the –

13 The Court: Answer the question, sir.

14 The Witness: Yes.

15 By Mr. Bechtel:

16 Q: Okay, on the bottom there, do you see the handwriting that says,

17 "Wrong address. Return to sender?"

18 A: Yes.

19 Q: Is that your handwriting?

20 A: No, it's not.

21 Q: Do you know who[se] handwriting it is?

22 A: I don't know.

23 Q: Do you know anyone in your household who would've written that on a

24 document received by – sent by my office?

25 A: I don't know.

26 Q: Can you turn to the next document. It's made out to Mostafa Niknafs.

27 It's a smaller envelope.

28 The Court: Could I see that first document? Hand it to me.

1     *(Document provided to the Court.)*

2     . . .

3     By Mr. Bechtel:

4     Q: Now do you see the handwriting on there that says, "Not here. Return to

5     sender"?

6     A: Yes.

7     Q: Is that your handwriting?

8     A: No, it's not.

9     The Court: Let me see that document.

10     *(Document provided to the Court.)*

11     By Mr. Bechtel:

12     Q: Do you know who[se] handwriting it is?

13     A: Don't know.

14     The Court: Well, this is your address isn't it? 4 Secret Cove?

15     The Witness: Yes, it is.

16     The Court: Well, who's writing this, then?

17     The Witness: I don't know.

18     The Court: Well, who lives there?

19     The Witness: Me and my wife.

20     The Court: Anybody else?

21     The Witness: No.

22     The Court: Then who's writing this?

23     The Witness: *(No response.)*

24     The Court: Look at me. I asked you a question.

25     The Court: Who's writing this?

26     The Witness: Yes.

27     The Court: Who's writing this?

28     The Witness: I don't know, sir. Your Honor, I don't know.

1  The Court: Counsel, your next question.

2  By Mr. Bechtel:

3  Q: Turn to the next document.

4  The Court: *(To the witness:)* You be careful with your answers. I'm

5  warning you.

6  The Witness: Yes, Your Honor.

7  The Court: Under penalty of perjury; do you understand that?

8  The Witness: Yes, Your Honor.

9  By Mr. Bechtel:

10 Q: The next document made out to Pro Tech Engineering Corporation,

11 doing business as Pro Tech Electric. Do you see the handwriting that says,

12 "Wrong address. Return to sender."

13 The Court: Counsel, I'm going to take a recess. You may want to talk to

14 your client for just a moment. It's under penalty of perjury. And my powers

15 are immense.

16 *(To the witness:)* Step down. Talk to your counsel.

17 I'll give you one opportunity. I'll be back in five minutes, Counsel.

18 I'd find your wisdom.

19 *(Pause in the proceedings at 3:36 p.m.)*

20 *(Proceedings resumed at 3:43 p.m.)*

21 The Court: We're back on the record.

22 I'm gonna ask one more time – we're back on the record – who wrote this?

23 The Witness: Your Honor, I did.

24 The Court: Pardon me?

25 The Witness: I did.

26 The Court: I appreciate that. You were about to go to jail; do you

27 understand that?

28 The Witness: Yes.

-6-

| | |
|---|---|
| 1 | The Court: I was calling for the marshals. |
| 2 | The Witness: Yes, sir. |
| 3 | The Court: You quit perjuring yourself. Okay? Understood? |
| 4 | The Witness: Yes, Your Honor. |
| 5 | The Court: You wrote that, didn't you? |
| 6 | The Witness: Yes, I did. |
| 7 | The Court: All right. |
| 8 | . . . |
| 9 | The Court: Now you go down there and talk to this other counsel, et cetera. |
| 10 | And you got served with this process, right? |
| 11 | The Witness: No, I did not, sir. That I – no. |
| 12 | The Court: You're certainly aware of it. I mean, you're getting these letters |
| 13 | in the mail. Come on. |
| 14 | The Witness: I'm – |
| 15 | The Court: Now step down. |
| 16 | *(To counsel:)* Work with this other counsel, quickly. Okay? I don't want to |
| 17 | put him in jail. |
| 18 | *(To the witness:)* Step off my stand. |
| 19 | The Witness: Sit down? |
| 20 | The Court: I mean, very quickly now. |

Transcript (Dkt. 56) at 58:22–64:15.

Following this testimony, the parties entered into a binding stipulation on the record. *See id.* at 65:2–70:25. The parties subsequently filed the stipulation on the docket (Dkt. 47), which the Court approved on May 16, 2016, *see generally* Order Approving Stipulation Re: Ex Parte Application to Set Aside Default and Contempt Hearing ("May 16, 2016 Order") (Dkt. 50). The Court ordered, "pursuant to the 'Stipulation Re: Ex Parte Application to Set Aside Default and Contempt Hearing' entered into by and between the Parties," as follows:

> (1) Defendants' Ex Parte Application to Set Aside Default is withdrawn, with prejduce.
>
> (2) Defendant and its principal, Mostafa Niknafs, shall be found in contempt for failing to comply with plaintiffs' subpoenas.
>
> (3) Defendant shall pay plaintiffs the sum of $1,488.00 by May 16, 2016.
>
> (4) Defendant shall pay the plaintiffs reasonable attorneys' fees and costs incurred, which shall be determined by the Court . . . .
>
> (5) Defendant shall use its best efforts to produce all documents identified in plaintiffs' subpoena, without objection, by June 8, 2016. To the extent the documents identified in plaintiffs' subpoena are not in defendant's possession, custody or control, defendant will endeavor to produce the records as soon as reasonably practicable.

*Id.* at 1–2. The Court therefore held Defendant Pro Tech and Niknafs in contempt and ordered Defendant to pay Plaintiffs' reasonable attorney's fees and costs.

Plaintiffs filed the instant Application on June 6, 2016. Defendant opposed on June 9, 2016 (Dkt. 53), and Plaintiffs replied the same day (Dkt. 54).

### I. Legal Standard

"Sanctions for civil contempt are imposed to coerce compliance with a court order, to compensate the party pursuing contempt for injuries resulting from the contemptuous behavior, or both." *Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV0800519MMMRZX, 2009 WL 605789, at \*3 (C.D. Cal. Mar. 9, 2009) (citing *United States v. Mine Workers of America*, 330 U.S. 258, 303–04 (1947)); *see also Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 877 F.2d 787, 790 (9th Cir. 1989).[4] Attorney's fees and costs are properly awarded as a sanction for contempt. *See In re Dyer*, 332 F.3d 1178, 1195 (9th Cir. 2003); *Perry v.*

---

[4] Courts have inherent power to enforce their orders through civil contempt, *see Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation omitted), and a district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders. *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992), *cert. denied*, 506 U.S. 1081 (1993). Further, Federal Rule of Civil Procedure 45(g) provides: "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." And, pursuant to Rule 37(b)(2)(A)(vii), "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," the Court may "issue further just orders," including "treating as contempt of court the failure to obey an order."

*O'Donnell*, 759 F.2d 702, 705–06 (9th Cir. 1985); *see also Henry Schein, Inc. v. Certified Bus. Supply Inc.*, No. SACV031662DPC ANX, 2008 WL 4962851, at *1 (C.D. Cal. Nov. 18, 2008) ("In the contempt order, the Court found that reasonable attorney's fees and costs were appropriate sanctions for the Defendant's civil contempt.").

"Even after a court concludes that a party is entitled to an award of attorney's fees '[i]t remains for the district court to determine what fee is reasonable.'" *Innovation Ventures, LLC v. Distrib., Inc.*, No. SACV1200717ABEX, 2015 WL 5319815, at *2 (C.D. Cal. Apr. 29, 2015), *amended sub nom. Innovation Ventures, LLC v. N2G Distrib., Inc.* (C.D. Cal. May 13, 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Courts determine what constitutes a "reasonable fee award" by first calculating the lodestar. *Id.*; *see Bademyan*, 2009 WL 605789, at *3 (applying lodestar analysis to compensatory award of attorney's fees after finding of civil contempt). The lodestar amount "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433.

The Court calculates "the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Bademyan*, 2009 WL 605789, at *3 (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). To determine reasonable hourly rates, the Court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008). In evaluating what is a reasonable number of hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). The party requesting fees first must prove the hourly rate and number of hours that go into the lodestar calculation are reasonable themselves. *Intel*, 6 F.3d at 623. The amount may be reduced if the hours are duplicative, excessive, or otherwise unnecessary. *Id.*; *Hensley*, 461 U.S. at 433.

After calculating the lodestar, the Court "may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67,

69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Intel*, 6 F.3d at 622 (internal citation omitted).[5]

**II. Discussion**

As set forth above in the May 16, 2016 Order, the Court has already ordered the payment of "plaintiffs' reasonable attorneys' fees and costs incurred." May 16, 2016 Order at 2. Therefore, the only question before the Court is whether Plaintiffs' request is reasonable. Plaintiffs request an award of fees and costs in the amount of $37,485.92, consisting of $34,322.00 for attorney's fees and $3,163.92 for litigation costs. *Id.*; *see also* Declaration of Matthew T. Bechtel ("Second Bechtel Decl.") (Dkt. 52-1) ¶¶ 4, 14.

**A. Reasonable Rates**

Defendant does not contest any of the hourly rates sought by Plaintiffs. Nonetheless, the Court must still determine whether Plaintiffs have met their burden of producing evidence showing the rates charged by Plaintiffs' counsel are in line with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiffs seek a rate of $300.00 per hour for attorney Susan G. Lovelace ("Ms. Lovelace"), a partner who has been a licensed attorney in California since 1992, *see* Declaration of Matthew T. Bechtel ("First Bechtel Decl.") (Dkt. 29) ¶ 5(h); a rate of $240.00 to $270 per hour[6] for attorney Matthew T. Bechtel ("Mr. Bechtel"), an associate who has been a licensed attorney in California since 2008, *id.*; and a rate of $100.00 per hour for paralegal Kimberley A. Morrison ("Ms. Morrison"), a certified paralegal who has performed work for Laquer, Urban, Clifford & Hodge LLP ("LUCH") since 1997, *id.* The Court finds the requested rates to be reasonable. *See Rangel v. Aetna Life Ins. Co.*, No. 515CV00303ODWKKX, 2016 WL 1449539, at *7 (C.D. Cal. Apr. 12, 2016) (noting counsel offered declarations and case law suggesting the

---

[5] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

[6] Based on the Court's review of the billing records, it appears Mr. Bechtel's hourly rate increased from $240 per hour to $270 per hour around December 2015. *See* Second Bechtel Decl. Ex. A at 4.

prevailing rate for ERISA attorneys in the Los Angeles area is between $425 and $600 per hour, and finding a $500 hourly rate reasonable); *Mitchell v. Metro. Life Ins. Co.*, No. CV 05-00810 DDPRNBX, 2008 WL 1749473, at *2 (C.D. Cal. Apr. 7, 2008), *aff'd sub nom. Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192 (9th Cir. 2010) (finding the "2008 market rate for plaintiff-side partner-level ERISA attorneys is $400-$575/hour"); *Hawkins-Dean v. Metro. Life Ins. Co.*, No. 2:03-CV-01115ER, 2007 WL 2735684, at *2 (C.D. Cal. Sept. 18, 2007) (awarding senior partner $575 per hour, associate $350 per hour, and law clerks $20 per hour); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (concluding Plaintiff met her burden of demonstrating $375 to $400 per hour "is in line with the prevailing market rate" for ERISA plaintiffs' lawyers of comparable skill").

The specific rates Plaintiffs request are further supported by the Declaration of Douglas Waite ("Waite Decl.") (Dkt. 27), a certified public accountant and principal at Miller, Kaplan, Arase & Company LLP, *id.* ¶ 2, a firm whose clients include "many of the multi-employer, Taft-Hartley Trust Funds in Southern California," *id.* ¶ 3. Waite declares he "is personally familiar with the hourly rates of legal fees charged to our clients by various law firms," which "range from a low of $125.00 per hour to $300.00 per hour or higher with a majority of law firms charging between $200.00 per hour and $300.00 per hour." *Id.* ¶ 4. He further declares he has "reviewed the hourly rates charged by Laquer, Urban, Clifford & Hodge," and "believe[s] these hourly rates for attorneys are reasonably within the range of fees charged by law firms for similar services in this area." *Id.* ¶ 5. Mr. Bechtel also declares "[t]he typical fee in this field of practice is often $350.00 per hour or more." First Bechtel Decl. ¶ 5(k).

Based on the foregoing, the Court concludes the rates Plaintiffs request are reasonable. The Court will now address the reasonableness of the hours expended litigating the case.

### B. Number of Hours Reasonably Expended

In total, Plaintiffs request $34,322.00 in attorney's fees (for 128.70 hours of work) and $3,163.92 for litigation costs. As a preliminary matter, the Court will address the core of Defendant's Opposition: the scope of the fee award. *See* Opp'n at 2. In particular, Defendant asserts Plaintiffs should not receive an award for all attorney's fees and costs incurred in the

litigation to date, *id.*; rather, Defendant argues "the only attorneys' fees that should be awarded in conjunction with Plaintiff's Application are those associated with the Plaintiff[s'] August 17, 2015 Motion to Compel Defendant to Produce Documents, and Request for Sanctions and the subsequent May 9, 2016, contempt hearing," *id.* at 6. Defendant does not refer to or object to specific billing entries; rather, Defendant only makes this general argument. *See* Opp'n at 6. Plaintiffs respond that the Court's May 16, 2016 Order "does not limit the fees and costs to the contempt hearing," and state "all of the attorneys' fees incurred in this action thus are the direct result of Pro Tech's and Mr. Niknaf's knowing and intentional disregard for the Trustees' audit demands and pleadings served in this case." Reply at 2; *see also id.* at 4.

Having considered the parties' arguments, the Court finds it inappropriate to award Plaintiffs for *all* the attorney's fees and costs expended in relation to this litigation. The Court therefore limits Plaintiffs' recovery to hours sufficiently related to events, issues, and behavior giving rise to the contempt hearing and hours related to issues arising out of the contempt hearing and subsequent May 16, 2016 Order. *See Bademyan*, 2009 WL 605789, at *3 ("Sanctions for civil contempt are imposed to coerce compliance with a court order, to compensate the party pursuing contempt for injuries resulting from the contemptuous behavior, or both") (citation omitted).[7] Therefore, the Court will award attorney's fees related to Plaintiffs' Motion to Compel, the Magistrate Judge's September 18, 2015 Order (and subsequent issues related to compliance), the contempt hearing, the Court's May 16, 2016 Order (and subsequent issues related to compliance), and the preparation of this Application. In addition, given that whether Defendant was properly served with the underlying Complaint, subpoenas, Motion to Compel, and Magistrate Judge's Order emerged as key issues prior to and during the contempt hearing, the Court concludes Plaintiffs should be awarded for hours related to serving Defendant.[8] The Court concludes this approach is appropriate and reasonable, particularly in

---

[7] The Court notes Plaintiffs may seek attorney's fees not covered by this award at the conclusion of the litigation, if appropriate; this Application does not preclude future recovery.

[8] The Court has also determined Plaintiffs should be awarded for hours spent on work related to responding to Defendant's Ex Parte Application for an Order Setting Aside Default because the issue underlying that Ex Parte Application – whether Defendant was properly served – was ultimately the critical issue during the contempt hearing. Indeed, it was Niknaf's testimony concerning service and notice that prompted the parties to stipulate that Defendant would withdraw its Ex Parte Application with prejudice. *See* May 16, 2016 Order at 1; *see* Transcript (Dkt. 56) at 61:2–64:24.

-12-

light of the discussions on the record during the contempt hearing and the purposes of sanctions for civil contempt. *See Bademyan*, 2009 WL 605789, at \*6 (finding individual in contempt of Magistrate Judge's order compelling her to appear for deposition and "imposing sanctions on [individual] . . . representing the attorneys' fees and costs defendant reasonably incurred attempting to depose her"); *Innovation Ventures*, 2015 WL 5319815, at \*8 ("IV is entitled to an award of its reasonable attorneys' fees incurred prosecuting the contempt proceeding and protecting the Court's orders as a compensatory sanction for Contemnor's conduct.").

After reviewing the billing records and accompanying declaration, the Court finds the following hours billed by Ms. Lovelace, Mr. Bechtel, and Ms. Morrison are *not* recoverable because these hours are not sufficiently related to events, issues, and behavior giving rise to the contempt hearing, and hours related to issues arising out of the contempt:[9]

- .2 hours billed by Ms. Lovelace on 1/9/2015 (Receive email from L Marquez requesting strong letter for audit complaince; draft emails to MTD and L Marquez re: same.)
- .7 hours billed by Mr. Bechtel on 1/13/2015 (Draft audit demand letter.)
- .2 hours billed by Ms. Lovelace on 2/2/2015 (Review efile; draft email to MTD re: status and strategy; conference with MTB re: same.)
- .7 hours billed by Mr. Bechtel on 2/2/0215 (Telephone call to John Park; Telephone call to Mike Nifnak [sic].)
- .1 hours billed by Ms. Lovelace on 2/12/2015 (Draft email to MTB re: response to audit compel letter.)
- .6 hours billed by Mr. Bechtel on 2/27/2015 (Draft second audit demand letter.)
- .1 hours billed by Ms. Lovelace on 3/23/2015 (Draft email to MTB re: status and strategy.)
- .5 hours billed by Mr. Bechtel on 3/25/2015 (Telephone call to Moustafa NikNaf [sic]; draft email to John Park.)

---

[9] The Court notes the initials "SGL" refer to Ms. Lovelace, the initials "MTB" refer to Mr. Bechtel, and the initials "KAM" refer to Ms. Morrison. *See* Second Bechtel Decl. ¶ 4.

- .1 hours billed by Ms. Lovelace on 3/25/2015 (Receive email from MTB re: status and strategy)
- .2 hours billed by Mr. Bechtel on 3/26/2015 (Draft report of legal counsel.)
- .1 hours billed by Ms. Morrison on 3/30/2015 (Review file regarding status; update Delinquency/Collection Spreadsheet.)
- .5 hours billed by Mr. Bechtel on 4/3/2015 (Review and respond to email from John Park re: audit status; draft complaint.)
- 1 hour billed by Mr. Bechtel on 4/21/2015 (Revise complaint. (Audit Compel Lawsuit))
- .1 hours billed by Ms. Lovelace on 4/21/2015 (Exchange emails with MTD re: status of lawsuit. (Audit Compel Lawsuit))
- .2 hours billed by Mr. Bechtel on 4/24/2015 (Review initial standing order and ADR Notice.)
- .2 hours billed by Ms. Lovelace on 5/25/2015 (Review delinquency/collection spreadsheet from KAM; review efile; review CSLB website. (Audit Compel Lawsuit))
- 1.3 hours billed by Mr. Bechtel on 6/9/2015 (Draft request for entry of default; draft subpoena. (Audit))
- .2 hours billed by Ms. Lovelace for 6/22/2015 (Review court's order re: filing Motion for Default Judgment; email to MTB re: same and re: serving subpoena (Audit))
- .2 hours billed by Ms. Morrison on 7/2/2015 (Review file regarding status; update delinquency/colelction spreadsheet. (Audit Compel Lawsuit))
- .7 hours billed by Mr. Bechtel on 7/2/2015 (Draft declaration in response to Order to Show Cause. (Audit Compel Lawsuit))
- .4 hours billed by Mr. Bechtel on 7/2/2015 (Draft JCC Report.)
- .1 hours billed by Mr. Bechtel on 7/8/2015 (Review order discharging Order to Show Cause. (Audit Compel Lawsuit))

- .1 hours billed by Ms. Lovelace on 7/9/2015 (Review court's order discharging Order to Show Cause. (Audit Compel Lawsuit))
- .2 hours billed by Mr. Bechtel on 8/17/2015 (Draft memo to SGL re: delinquency status. (Audit))
- .1 hours billed by Ms. Lovelace on 8/20/2015 (Review court's order discharging Order to Show Cause. (Audit))
- .1 hours billed by Mr. Bechtel on 8/21/2015 (Review minute order discharging order to show cause.)
- .2 hours billed by Ms. Lovelace on 8/25/2015 (Review memo from MTB re: litigation and audit status and strategy; review efile; review SOS and CSLB websites. (Audit))
- .1 hours billed by Mr. Bechtel on 9/14/2015 (Review file re: status. (Audit Compel Lawsuit))
- .4 hours billed by Mr. Bechtel on 9/30/2015 (Draft report of legal counsel. (Audit Compel Lawsuit))
- .1 hours billed by Ms. Morrison on 10/6/2015 (Review file regarding status; update delinquency/collection spreadsheet. (Audit Compel Lawsuit))
- .2 hours billed by Mr. Bechtel on 10/22/2015 (Review file re: status of document production. (Audit Compel Lawsuit))
- 1.4 hours billed by Mr. Bechtel on 11/2/2015 (Conference with SGL re: plan of aciton; review files. (Audit Compel Lawsuit))
- .3 hours billed by Mr. Bechtel on 11/24/2015 (Review and respond to email from clerk re: Motion for Default Judgment. (Audit Compel Lawsuit))
- 4.6 hours billed by Mr. Bechtel on 11/27/2015 (Draft Motion for Default Judgment. (Audit Compel Lawsuit))
- .5 hours billed by Mr. Bechtel on 12/9/2015 (Telephone call to A. Panomchai. (Audit Compel Lawsuit))

- .2 hours billed by Ms. Lovelace on 12/9/2015 (Conference with MTB re: employer's claim of inactive status and auding by L441 Funds; strategy re: same. (Audit Compel Lawsuit))
- .5 hours billed by Mr. Bechtel on 12/29/2015 (Draft email to A. Panomchai re: recommendation to proceed. (Audit Compel Lawsuit))
- 3.8 hours billed by Mr. Bechtel on 12/30/2015 (Review email from A. Panomchai re: motion for default judgment; revise motion for default judgment. (Audit Compel Lawsuit))
- .2 hours billed by Mr. Bechtel on 12/31/2015 (Draft report of legal counsel.)
- 2.2 hours billed by Mr. Bechtel on 1/27/2016 (Draft email to D. Waite; revise Panomchai Declaration; revise memo. (Audit Compel Lawsuit))
- .1 hours billed by Ms. Lovelace on 1/29/2016 (Review court's emailed notifications re: Motion for Default Judgment filed. (Audit Compel Lawsuit))
- .1 hours billed by Ms. Lovelace on 2/9/2016 (Review re: litigation, delinquency, collection. (Audit Compel Lawsuit))
- .1 hours billed by Ms. Lovelace on 2/23/2016 (Review court's order taking hearing off claendar and matter under submission. (Audit Compel Lawsuit))
- .1 hours billed by Mr. Bechtel on 2/23/2016 (Review order from District Court taken Motion for Default Judgment under submission. (Audit Compel Lawsuit))
- .1 hours billed by Ms. Morrison on 3/2/2016 (Review file regarding statuts; udate delinquency/collection spreadsheet. (Audit Compel Lawsuit))
- .2 hours billed by Mr. Bechtel on 3/3/2016 (Draft memo to SGL re: delinquency status. (Audit Compel Lawsuit))
- .1 hours billed by Ms. Lovelace on 3/4/2016 (Review memo from MTB re: delinquency, litigation, and pending Motion for Default Judgment. (Audit Compel Lawsuit))
- .2 hours billed by Ms. Morrison on 3/29/2016 (Review file regarding statuts; udate delinquency/collection spreadsheet. (Audit Compel Lawsuit))

Second Bechtel Decl. Ex. A ("LUCH Billing Records") at 1–6.

The Court also finds the following entry (not listed above) are inadequately vague: .3 hours billed by Mr. Bechtel on 3/24/2016 for "Draft report of legal counsel (Audit Compel Lawsuit)." *Id.* at 5. Based on this entry, the Court "is unable to discern how the time spent is attributable to the case at hand." *Santiago v. Equable Ascent Fin.*, No. C 11-3158 CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013) (citation omitted). Therefore, these "vague entries will not be included in the fee award." *Ravet v. Stearn*, No. 07CV31 JLS (CAB), 2010 WL 3076290, at *7 (S.D. Cal. Aug. 6, 2010). In total, the Court therefore reduces Ms. Lovelace's request by 2.2 hours, reduces Mr. Bechtel's request by 22 hours, and reduces Ms. Morrison's hours by .7 hours.

Having reviewed the entirety of Plaintiffs' billing records, the Court declines to reduce the hours beyond the reductions specifically applied above. The Court is satisfied the hours billed (other than those specfically addressed above) are appropriate and reasonable. After factoring in the reductions, the total attorney and paralegal billing time is as follows: 26.4 hours for Ms. Lovelace ($7,920.00), 74.9 hours for Mr. Bechtel ($19,908.00[10]), and 2.5 hours for Ms. Morrison ($250.00), for a total of $28,078.00.

### C. Costs

Plaintiffs also seek costs of $3,163.92. In support of this request, Plaintiffs provided a "Transactions Costs Listing Report" prepared by LUCH. Second Bechtel Decl. Ex B. Defendants object, arguing Plaintiffs should not be awarded costs for the filing fee of this action, in-house copy costs, facsimiles, mileage, Westlaw research, prints, and scans because such costs are premature. Opp'n at 6. Plaintiffs do not specifically respond to this argument; rather, Plaintiffs generally assert they should be awarded all costs incurred. *See* Reply at 2.

As stated above, Defendant has already been ordered to "pay the plaintiffs' reasonable attorneys' fees *and costs*." May 16, 2016 Order at 2 (emphasis added). Thus, the Court does not find Plaintiffs' request for costs premature. However, the Court agrees certain reductions are appropriate; the Court concludes costs that are not sufficiently connected to events and issues

---

[10] In calculating this amount, the Court determined which hours expended by Mr. Bechtel were billed at a rate of $240 per hour and which hours were billed at a rate of $270 per hour.

giving rise to the contempt hearing and hours related to events arising out of the contempt hearing should not be awarded pursuant to this Application.

The Court has carefully reviewed Plaintiffs' costs report and finds the following reductions are appropriate. First, Plaintiffs should not be awarded the complaint filing fee of $400, *see* Second Bechtel Decl. Ex. B at 7. Further, the Court declines to award costs for: "In-House Copies" incurred from 1/31/2015 through 7/31/2015 (a total of $4.75), *id.* at 3; "Fascimiles" incurred from 1/31/2015 through 1/29/2016 (a total of $3), *id.* at 4; online research charges incurred on 6/1/2015 and 7/1/2015 (a total of $44.36), *id.* at 5; charges for "Prints" incurred on 6/30/2015 (a total of $4.50), *id.*; and charges for "Scans" incurred from 1/31/2015 through 7/31/2015 (a total of $10.75), *id.* at 6. Accordingly, the Court reduces Plaintiffs' costs by $467.36 for a total of $2,696.56.

Having reviewed the entirety of Plaintiffs' costs report, the Court declines to reduce the costs beyond the reductions specifically applied above.

### D. Conclusion

Before calculating the presumptive lodestar, the Court must make one more reduction. The Magistrate Judge ordered Defendant "to pay [Plaintiffs] sanctions of $1,448.00 as the reasonable expenses incurred in obtaining this order." *See* September 18, 2015 Order at 5. The billing records submitted along with the instant Application indicate Plaintiffs are again seeking to recover for hours incurred in obtaining the Magistrate Judge's September 18, 2015 Order. *See, e.g.*, Bechtel Decl. Ex. A at 2 (billing 2.6 hours on 7/31/2015 for "Draft motion to compel production of documents"). Accordingly, the attorney and paralegal billing time ($28,078.00) and costs ($2,696.56) are further reduced by $1,448.00. Accordingly, including the attorney and paralegal billing time and costs, the presumptive lodestar calculation is $29,326.56.[11]

---

[11] Counsel for Defendant, Collin Cook ("Cook"), attached a declaration to Defendant's Opposition indicating that, on May 12, 2016, Defendant "remitted [this] payment to Plaintiff[s]." Declaration of Collin Cook ("Cook Decl.") (Dkt. 53-1) ¶ 6. At the hearing on June 10, 2016, Plaintiffs' counsel confirmed Plaintiffs had received the $1,448.00 payment.

**E. Adjustments to the Lodestar**

After calculating the lodestar, the Court may adjust the presumptively reasonable lodestar based on the *Kerr* factors. *Intel*, 6 F.3d at 622. The Court has reviewed the *Kerr* factors and does not find that any adjustments to the lodestar amount are warranted in this case.

**III.    Disposition**

For the foregoing reasons, the Court hereby GRANTS IN PART Plaintiffs' Application. Defendant Pro Tech Engineering Corporation is hereby ORDERED to pay a total of $29,326.56 in attorney's' fees and costs as a sanction by **on or before July 18, 2016.**

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated:  June 20, 2016